2 CIT ESERVE

FILED
DALLAS COUNTY
1/4/2017 4:40:02 PM
FELICIA PITRE
DISTRICT CLERK

Stephanie Clark

Case 3:17-cv-00472-S   Document 1-5   Filed 02/20/17   Page 1 of 12   PageID 20

CAUSE NO. DC-17-00098 _____

| | | |
|---|---|---|
| WILLIAM M. ARRINGTON, INDIVIDUALLY, AS BENEFICIARY, AND AS REPRESENTATIVE OF THE ESTATE OF WILLIAM L. ARRINGTON | § § § § § | IN THE DISTRICT COURT |
| v. | § § | OF DALLAS COUNTY, TEXAS |
| JACKSON NATIONAL LIFE INSURANCE COMPANY and DANNY C. BURBA | § § | _____ JUDICIAL DISTRICT |

**ORIGINAL PETITION AND
REQUEST FOR DECLARATORY JUDGMENT**

1.  This is a suit for damages and other relief by Plaintiff William M. Arrington, Individually and as Representative of the Estate of William L. Arrington, against Jackson National Life Insurance Company and Danny C. Burba. It is an action for breach of the insurance contract, negligence, breach of fiduciary duty, and damages.

2.  Discovery should be handled under Discovery Level 3.

**Parties**

3.  Plaintiff William M. Arrington is an individual residing in Pampa, Texas. He appears in this action individually and as representative of the Estate of William L. Arrington. The last three numbers of his driver's license are 184 and the last three numbers of his social security number is 832.

4.  Defendant Jackson National Life Insurance Company ("Jackson National") is a foreign company licensed to do business and doing business in the State of Texas. It may be served through its attorney for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, or wherever it may be found.

EXHIBIT B2

5. Defendant Danny C. Burba ("Burba") is a resident of Amarillo, Texas. He can be served at P.O. Box 51126, Amarillo, Texas 79159, or at 4404 Wesley St., Amarillo, Texas 79121, or wherever he may be found.

## Venue and Jurisdiction

6. Venue is proper in Dallas County, Texas under TEX. CIV. PRAC. & REM. CODE §15.002(a)(1) & (3) in that all or a substantial part of the events or omissions giving rise to this claim occurred in Dallas County. In this regard, Jackson National's claims office and/or its duly authorized agents on behalf of same failed to properly provide Notices and Account Statements under the policy of insurance made the subject of this lawsuit. It is also believed agents and/or representatives of this office were involved, in whole or in part, in the decision to improperly terminate the policy of insurance made the subject of this lawsuit.

7. This Court has subject-matter jurisdiction because the amount in controversy exceeds the jurisdictional minimum. Further, this Court has jurisdiction under Texas Civil Practice and Remedies Code §§17.041 and 17.042 because at the time of the occurrence in question, Jackson National was a nonresident doing business in the State of Texas and committed a tort in whole or in part in the State of Texas.

## Claims for Relief

8. Pursuant to Tex. R. Civ. Proc. 47, Plaintiff seeks monetary relief over $1,000,000.

## Facts and Factual Background

9. Jackson National is in the insurance business and sells various forms of life insurance and annuities. The sale of these life insurance policies is promoted through captive sales agents and independent brokers and agents. The promise of

life insurance is that upon the covered death of the insured, it will pay benefits to the policy beneficiary.

10. Implicit in the promise of the Jackson National policy is that it will timely, fairly, and objectively adjust and pay a covered claim. If in doubt about the cause or nature of the insured's death, Jackson National implicitly promises to fairly and objectively investigate the claim and promptly pay if the claim meets the policy requirements.

11. An insurance agent owes certain duties to his customers. If, due to the course of his dealings with his customer, he has unique knowledge of their needs, he has both a duty and a fiduciary obligation to ensure that his customers are receiving the appropriate amount of insurance coverage, paying the appropriate premiums, and reminds them if their policies are close to lapsing. The Arrington family sought out an insurance broker for these reasons and others.

12. On May 6, 1998, William L. Arrington ("Bill Arrington") applied for a life insurance policy with Southwestern Life Insurance Company. In his application, he confirmed that he, as the owner and proposed insured, would pay the premiums and all mail should be sent to him at his business address – William L. Arrington, Drawer 31, Pampa, Texas 79065. At the time of application, Margareta M. Arrington was named the primary beneficiary and William M. Arrington ("Buck Arrington") was named as a beneficiary upon death of Mrs. Arrington. The application was signed by Bill Arrington and his agent, Burba, at Danny Burba Insurance Company.

13. Southwestern accepted Bill's application and issued him Policy No. 1000036324 (the "Policy") with a face value of $976,500. The Policy was a flexible premium

adjustable life insurance policy, allowing the policyholder to adjust his premium month to month or year to year, among other benefits. Burba assisted Bill Arrington in making this purchase and determining which type of life insurance policy would best suit his needs. Burba advised Bill Arrington about the annual premium amount he must pay to keep the Policy in effect. In doing so, Burba failed to properly explain at the outset the risk that Bill Arrington's planned monthly payments may not be enough to prevent the Policy from lapsing over the life of the Policy.

14. Upon receiving the Policy, Bill Arrington made a down payment and was told by Burba to make a monthly payment of $1,100.00 per month for the life of the Policy. In total, from 1998 to 2015, Bill Arrington paid more than $200,000 towards the Policy. At no time did he intend for his premiums to be unpaid or the Policy to lapse for non-payment of premiums.

15. In February 2007, Bill Arrington received notice that Southwestern merged with Valley Forge Life Insurance Company ("Valley Forge"). In September 2007, he received another notice that Valley Forge changed its name to Reassure America Life Insurance Company ("Reassure"). Both Valley Forge and Reassure represented that the Policy would be serviced from its Coppell, Dallas County, Texas location.

16. At all relevant times, Valley Forge, and later Reassure, sent correspondence and notices to Plaintiff's decedent from its location in Coppell, Dallas County, Texas.

17. In 2009, Margareta M. Arrington, the primary beneficiary of the Policy, passed away. Bill Arrington had already designated his son Buck Arrington as the contingent beneficiary in the original application for the Policy in 1998. In

addition, he sent in a form, pursuant to the Policy's terms, to change the primary beneficiary to Buck Arrington. Nevertheless, Reassure, after receiving notice of Mrs. Arrington's death, erroneously addressed its subsequent correspondence to the "Estate of Margarita M. Arrington", rather than to Bill Arrington and the new beneficiaries.

18. On March 14, 2013, Bill Arrington received notice that Jackson National had acquired Reassure and Reassure had been merged with Jackson National as of December 31, 2012.

19. At all relevant times, Reassure and Jackson National maintained an office in Dallas County at P.O. Box 9584 Coppell, Texas 75019 where it purported to service Bill Arrington's policy.

20. Jackson National purportedly provided notices and correspondence regarding the Policy to Bill from its office in Dallas County. It is believed that Jackson National will contend that it routinely sent notices regarding the Policy and premiums to the address previously provided – the same that had been used since 1998. The evidence in this case will show this never happened.

21. At all relevant times, it was the habit and regular business practice of the Arrington Family to stamp each letter received regarding the Policy as "Received", along with the date received, and to save the documents for Bill Arrington's records. This systematic method of maintaining mail as it has been received was utilized for all correspondence and notices that were received concerning the Policy.

22. Towards the end of 2015, Buck Arrington noticed that the Arrington Family had not been receiving statements regarding the Policy. He called Jackson National, only to learn that Jackson National had terminated the Policy in June 2015. The

Arrington Family did not know of the Policy termination before Buck Arrington called Jackson National. It had not received notice of the potential lapse or of the termination.

23. Bill and Buck immediately applied for reinstatement and provided Jackson National with Bill's medical history. However, Jackson National deemed him uninsurable and denied reinstatement on May 16, 2016. Unconscionably, they did so after collecting over $200,000 in premium payments.

24. Following Jackson National's denial, the Arrington Family sought to determine how the Policy was cancelled when they had consistently been paying premiums but recently had not received account statements or notices regarding the potential lapse or termination of the Policy. Jackson National eventually sent a letter directly to Buck with copies of letters it had supposedly sent to "The Estate of Margarita M. Arrington" at the Pampa, Texas address. These letters alleged that the Policy lapsed when the cash surrender value was depleted and the premium payments were insufficient to bring the Policy out of the grace period.

25. Jackson National provided no proof of mailing for any of those letters. Jackson National provided no evidence that it sent letters to the proper addressee under the Policy. To date, Jackson National has still not provided any evidence that the letters in question were actually mailed or received by the Arrington Family.

26. Despite Jackson National's claims, the Arrington Family never received any notice that the Policy was in danger of lapsing, nor any notice that the Policy would be terminated. Further, as required under the Policy, the 2013 and 2014 account statements were not provided to the Arrington Family.

27. On information and belief, Burba failed to advise the Arrington Family that the monthly premium he advised, $1,100, would not be sufficient to prevent the Policy from lapsing over the life of the Policy. Burba never notified the Arrington Family that the Policy was in danger of lapsing, or that Jackson National had terminated the Policy in June 2015. Burba never advised the Arrington family on its potential rights to reinstatement under the policy for mental incapacity. Burba also failed to meet its statutory duty to do so in violation of the Texas Insurance Code.

## Breach of the Insurance Contract

28. Plaintiff incorporates the preceding factual allegations.

29. The Policy terminates, among other reasons, if "the grace period ends without payment of any required premium" or "the total indebtedness equals or exceeds the Accumulation Value less the surrender charge." The Policy contains a 61 day grace period "to pay a premium that will cover the monthly deduction." Under the Policy, Jackson National was obligated to, at least 30 days before the end of the grace period, "send a written notice that the policy will lapse." The notice is to be sent to the owner at the last address shown in the insurer's records and to any assignee of record.

30. However, Jackson National failed to provide proper notice as required by the Policy and failed to address any and all notices to the proper owner and beneficiary. Jackson National further breached the Policy by failing to provide the Arrington Family with an annual statement which would have shown that the cash surrender value would not cover the next monthly deduction.

31. At all relevant times, Bill Arrington paid the premiums required under the Policy.

32. The Arrington Family never received notice of Jackson National's intent to terminate the Policy or of the 30 days grace period remainder.

33. If the Arrington Family had received notice of Jackson National's intent to terminate the Policy, they would have paid all outstanding premiums to keep the Policy in full force and effect.

34. Bill Arrington died on November 11, 2016. A claim has been made on the policy that was previously terminated, but that claim remains unpaid. Buck Arrington thus sues Jackson National for breach of the insurance contract and all damages to which he is entitled.

### Request for Declaratory Judgment

35. Plaintiff incorporates the preceding factual allegations.

36. There is a real and substantial justiciable controversy between Buck Arrington and Jackson National that requires judicial declaration by this Court of the parties' rights and duties.

37. Pursuant to Ch. 37.001 and 37.004 of the Texas Civil Practice and Remedies Code, Buck Arrington requests a judicial determination declaring that the Policy was wrongfully terminated and that Jackson National is obligated to reinstate the Policy and pay the full face value of the Policy.

### Negligence

38. As the Arrington Family's insurance agent, Burba owed them certain duties. Among these duties was the duty to ensure that they had the appropriate amount of insurance coverage, paid the appropriate premiums, and did not let their policies lapse due to nonpayment of premiums.

39. Burba breached his duty to the Arrington Family through his negligence. Specifically, he failed to advise the Arrington Family that the monthly premium he advised, $1,100, would not be sufficient to prevent the Policy from lapsing over the life of the Policy. He never notified the Arrington Family that the Policy was in danger of lapsing. He never notified the Arrington Family that Jackson National had terminated the Policy in June 2015.

40. As a result of Burba's negligence, Plaintiff was damaged by the termination of the Policy, for which he now sues.

## Breach of Fiduciary Duty

41. An insurance agent owes his customer a common law duty of loyalty, which requires him to deal fairly and honestly with his customers. It also imposes an affirmative duty on the insurance agent to convey complete, thorough, and accurate information that is material to a customer's circumstance.

42. This obligation on an insurance agent includes an obligation to reasonably explain to customers the material terms and conditions of the Policy, discuss the premium amounts, and ensure that the customer has adequate notice of any significant deadlines, grace periods, or coverage determinations regarding their insurance coverage. This obligation is especially important when a customer chooses a flexible premium adjustable life insurance policy, allowing the customer to adjust his premium month to month or year to year.

43. Burba assisted Bill Arrington in selecting and determining which type of life insurance policy would best suit his needs. Burba advised Bill Arrington on the annual premium amount he must pay to keep the Policy in effect. In doing so, Burba failed to correctly calculate or properly explain that Bill Arrington's planned

monthly payments would not be enough to prevent the Policy from lapsing over the life of the Policy.

44. Burba breached his fiduciary duty to the Arrington Family. Specifically, he failed to advise the Arrington Family that the monthly premium he advised, $1,100, would not be sufficient to prevent the Policy from lapsing over the life of the Policy. He never notified the Arrington Family that the Policy was in danger of lapsing. He never notified the Arrington Family that Jackson National had terminated the Policy in June 2015.

45. As a result of Burba's breach of fiduciary duty, Plaintiff was damaged by the termination of the Policy, for which he now sues.

## Damages

46. The acts, omission, and practices of both Jackson National and Burba complained of in this action were the proximate cause of the damages sustained by Plaintiff. All of Jackson National and Burba's acts and practices were the producing cause of the actual damages suffered by Plaintiff. Those damages include, but are not limited to, actual damages and consequential damages suffered for breach of the insurance contract, negligence, and breach of fiduciary duty. For all of these wrongful acts, omissions, and practices, Plaintiff is entitled to money damages as may be found by the jury and as permitted by statute.

## Attorneys' Fees

47. This suit was made necessary by the wrongful acts and practices of Defendants. Plaintiff has been forced to retain an attorney to prosecute his claims, for which he has agreed to pay a reasonable attorney's fee. In this regard, he is entitled to recover his reasonable attorney's fees and expenses incurred and to be incurred in

this action for the full prosecution of this claim through trial and appeal, if any, that are reasonable and necessary for Plaintiff to obtain the relief he seeks. Accordingly, Plaintiff further seeks recovery of his reasonable attorney's fees pursuant to Section 38.001, *et. seq.* of the Texas Civ. Prac. & Rem. Code.

**General Claims**

48. All notices required to be given have been given, and all conditions precedent have been satisfied.

49. Plaintiff requests prejudgment interest at the maximum rate permitted by law, including that permitted pursuant to Tex. Ins. Code §542.060 and §1103.104(c), or the maximum rate permitted in equity.

**Request for Disclosure**

50. Plaintiff requests that each Defendant disclose, within 50 days of service of this request, the information and material described in Rule 194.2(a)-(l) of the Texas Rules of Civil Procedure. Copies of documents and other tangible items responsive to this request must be served on Plaintiff with Defendants' Response. Tex. R. Civ. P. 194.4.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, Plaintiff William M. Arrington, as Representative of the Estate of William L. Arrington, prays that he have a full trial on the merits of his claim, that he have and recover his actual and consequential damages, together with any and all of his attorney's fees, costs, expenses, and interest to which he may be justly entitled, and for general relief to which he may be entitled at law or in equity.

Respectfully submitted,

**DEANS & LYONS, LLP**

*/s/ Michael P. Lyons*
_____
**Michael P. Lyons**, TSB #24013074
mlyons@deanslyons.com
**Whitney L. Warren** TSB #24084395
wwarren@deanslyons.com
325 N. Saint Paul St., Suite 1500
Dallas, Texas 75201-3891
Phone: (214) 965-8500
Fax: (214) 965-8505


and

James C. Plummer, TBA #16075700
jplummer@plummerlawyers.com
Amar Raval, TBA # 24046682
araval@plummerlawyers.com
**PLUMMER | RAVAL**
4203 Montrose Boulevard, Suite 270
Houston, Texas 77006
Phone: (713) 522-2887
Fax: (713) 522-3605

**ATTORNEYS FOR PLAINTIFF**