IN THE UNITED STATES DISTRICRT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM M. ARRINGTON, | § | |
| INDIVIDUALLY, AS BENEFICIARY, AND | § | |
| AS REPRESENTATIVE OF THE | § | |
| ESTATE OF WILLIAM L. ARRINGTON | § | |
| | § | |
| v. | § | C.A. No. 3:17-cv-472 |
| | § | |
| JACKSON NATIONAL LIFE INSURANCE | § | |
| COMPANY and DANNY C. BURBA | § | |

## FIRST AMENDED COMPLAINT

1. This is a suit for damages and other relief by Plaintiff William M. Arrington, Individually and as Representative of the Estate of William L. Arrington, against Jackson National Life Insurance Company and Danny C. Burba. It is an action for breach of the insurance contract, negligence, breach of fiduciary duty, violations of the Texas Insurance Code, and damages.

**Parties**

2. Plaintiff William M. Arrington is an individual residing in Pampa, Texas. He appears in this action individually and as representative of the Estate of William L. Arrington.

3. Defendant Jackson National Life Insurance Company ("Jackson National") is a foreign company licensed to do business and doing business in the State of Texas. Jackson National has appeared and answered this suit.

4. Defendant Danny C. Burba ("Burba") is a resident of Amarillo, Texas. He can be served at P.O. Box 51126, Amarillo, Texas 79159, or at 4404 Wesley St., Amarillo, Texas 79121, or wherever he may be found.



## Venue and Jurisdiction

5. Venue is proper in Dallas County, Texas under Tex. Civ. Prac. & Rem. Code §15.002(a)(1) & (3) in that all or a substantial part of the events or omissions giving rise to this claim occurred in Dallas County. In this regard, Jackson National's claims office and/or its duly authorized agents on behalf of same failed to properly provide Notices and Account Statements under the policy of insurance made the subject of this lawsuit. It is also believed agents and/or representatives of this office were involved, in whole or in part, in the decision to improperly terminate the policy of insurance made the subject of this lawsuit.

6. In filing this Amended Complaint, Plaintiff does not waive his objections to removal of this matter. He contends that this Court lacks jurisdiction over this matter because the parties are not diverse.

7. Plaintiff contends that the 298th District Court of Dallas County, Texas has subject-matter jurisdiction because the amount in controversy exceeds the jurisdictional minimum. Further, it has jurisdiction under Texas Civil Practice and Remedies Code §§17.041 and 17.042 because at the time of the occurrence in question, Jackson National was a nonresident doing business in the State of Texas and committed a tort in whole or in part in the State of Texas.

## Facts and Factual Background

8. Jackson National is in the insurance business and sells various forms of life insurance and annuities. The sale of these life insurance policies is promoted through captive sales agents and independent brokers and agents. The promise of life insurance is that upon the covered death of the insured, it will pay benefits to the policy beneficiary.

9. Implicit in the promise of the Jackson National policy is that it will timely, fairly, and objectively adjust and pay a covered claim. If in doubt about the cause or nature of the insured's death, Jackson National implicitly promises to fairly and objectively investigate the claim and promptly pay if the claim meets the policy requirements.

10. An insurance agent owes certain duties to his customers. If, due to the course of his dealings with his customer, he has unique knowledge of their needs, he has both a duty and a fiduciary obligation to ensure that his customers receive the appropriate amount of insurance coverage, pay the appropriate premiums, receive annual account statements, and remind them if their policies are close to lapsing. The Arrington family sought out an insurance broker for these reasons and others.

11. On May 6, 1998, William L. Arrington ("Bill Arrington") applied for a life insurance policy with Southwestern Life Insurance Company. In his application, he confirmed that he, as the owner and proposed insured, would pay the premiums and all mail should be sent to him at his business address - William L. Arrington, Drawer 31, Pampa, Texas 79065. At the time of application, Margareta M. Arrington was named the primary beneficiary and William M. Arrington ("Buck Arrington") was named as a beneficiary upon death of Mrs. Arrington. The application was signed by Bill Arrington and his agent, Burba, at Danny Burba Insurance Company.

12. Southwestern accepted Bill's application and issued him Policy No. 1000036324 (the "Policy") with a face value of $976,500. The Policy was a flexible premium adjustable life insurance policy, allowing the policyholder to adjust his premium month to month or year to year, among other benefits. Burba played an intricate part in helping Bill Arrington make this purchase and choose which type of life insurance policy would best suit his needs. Burba advised Bill

Arrington about the annual premium amount he must pay to keep the Policy in effect. In doing so, Burba failed to properly explain at the outset the risk that Bill Arrington's planned monthly payments may not be enough to prevent the Policy from lapsing over the life of the Policy.

13. Upon receiving the Policy, Burba advised Bill Arrington to make a down payment and make a monthly payment of $1,100.00 per month for the life of the Policy. In total, from 1998 to 2015, Bill Arrington paid more than $200,000 towards the Policy. At no time did he intend for his premiums to be unpaid or the Policy to lapse for non-payment of premiums.

14. Burba was regularly copied on all correspondence regarding the Policy by Southwestern, Valley Forge, Reassure, and Jackson National.

15. In February 2007, Bill Arrington received notice that Southwestern merged with Valley Forge Life Insurance Company ("Valley Forge"). In September 2007, he received another notice that Valley Forge changed its name to Reassure America Life Insurance Company ("Reassure"). Both Valley Forge and Reassure represented that the Policy would be serviced from its Coppell, Dallas County, Texas location.

16. At all relevant times, Valley Forge, and later Reassure, sent correspondence and notices to Plaintiff's decedent from its location in Coppell, Dallas County, Texas.

17. In 2009, Margareta M. Arrington, the primary beneficiary of the Policy, passed away. Bill Arrington had already designated his son Buck Arrington as the contingent beneficiary in the original application for the Policy in 1998. In addition, he sent in a form, pursuant to the Policy's terms, to change the primary beneficiary to Buck Arrington. Nevertheless, Reassure, after receiving notice of Mrs. Arrington's death, erroneously addressed its subsequent correspondence to the "Estate of Margarita M. Arrington", rather than to Bill Arrington and the new beneficiaries.

18. On March 14, 2013, Bill Arrington received notice that Jackson National had acquired Reassure and Reassure had been merged with Jackson National as of December 31, 2012. At all relevant times, Reassure and Jackson National maintained an office in Dallas County at P.O. Box 9584 Coppell, Texas 75019 where it purported to service Bill Arrington's policy.

19. Jackson National purportedly provided notices and correspondence regarding the Policy to Bill Arrington from its office in Dallas County. It is believed that Jackson National will contend that it routinely sent notices regarding the Policy and premiums to the address previously provided – the same that had been used since 1998. The evidence in this case will show this did not happen.

20. At all relevant times, it was the habit and regular business practice of the Arrington Family to stamp each letter received regarding the Policy as "Received", along with the date received, and to save the documents for Bill Arrington's records. This systematic method of maintaining mail as it has been received was utilized for all correspondence and notices that were received concerning the Policy.

21. Towards the end of 2015, Buck Arrington noticed that the Arrington Family had not been receiving statements regarding the Policy. He called Jackson National, only to learn that Jackson National had terminated the Policy on or about June 26, 2015. The Arrington Family did not know of the Policy termination before Buck Arrington called Jackson National. It had not received notice of the potential lapse or of the termination.

22. Bill and Buck immediately applied for reinstatement and provided Jackson National with Bill's medical history. However, Jackson National deemed him uninsurable and denied reinstatement on May 16, 2016. Unconscionably, they did so after collecting over $200,000 in premium payments.

23. Following Jackson National's denial, the Arrington Family sought to determine why the Policy was cancelled when they had consistently paid premiums but had not notices regarding the potential lapse or termination of the Policy. After repeated requests, Jackson National eventually sent a letter to Buck with copies of letters it had supposedly sent to "The Estate of Margarita M. Arrington" at the Pampa, Texas address. These letters alleged that the Policy lapsed when the cash surrender value was depleted and the premium payments were insufficient to bring the Policy out of the grace period.

24. Jackson National provided no proof of mailing for any of those letters. Jackson National provided no evidence that it sent letters to the proper addressee under the Policy. To date, Jackson National has still not provided any evidence that the letters in question were actually mailed or received by the Arrington Family.

25. Despite Jackson National's claims, the Arrington Family never received any notice that the Policy was in danger of lapsing, nor any notice that the Policy would be terminated. Further, the 2014 account statement was not provided to the Arrington Family. The Arrington Family also did not receive notice of the beginning of the Policy's grace period or any notice during the Policy's grace period that the Policy would lapse.

26. On information and belief, Burba failed to advise the Arrington Family that the monthly premium he advised, $1,100, would not be sufficient to prevent the Policy from lapsing over the life of the Policy. Burba never notified the Arrington Family that the Policy was in danger of lapsing, or that Jackson National had terminated the Policy in June 2015. Burba never advised the Arrington family on its rights to reinstate the policy due to mental incapacity. Burba also failed to meet his statutory duty to do so in violation of the Texas Insurance Code.

27. Instead, Burba made several phone calls in November 2015 to Jackson National to find out about the status of the application for reinstatement of the Policy. Jackson National also sent Burba correspondence regarding the application for reinstatement.

28. The longstanding relationship between Bill Arrington and Burba was one of high levels of trust. Burba was Bill Arrington's agent for the majority of the 17 years that the Policy was in force. Burba assisted Bill Arrington in obtaining at least two other insurance policies. He would regularly send Bible scriptures and other religious quotes to Bill Arrington as evidence of their relationship of trust.

29. Bill Arrington died on November 11, 2016. Jackson National denied Buck Arrington's claim on the Policy in January 2017.

**Breach of the Insurance Contract**

30. Plaintiff incorporates the preceding factual allegations.

31. The Policy terminates, among other reasons, if "the grace period ends without payment of any required premium" or "the total indebtedness equals or exceeds the Accumulation Value less the surrender charge." The Policy contains a 61 day grace period "to pay a premium that will cover the monthly deduction." Under the Policy, Jackson National was obligated to, at least 30 days before the end of the grace period, "send a written notice that the policy will lapse." The notice is to be sent to the owner at the last address shown in the insurer's records and to any assignee of record.

32. However, Jackson National failed to provide proper notice as required by the Policy and failed to address any and all notices to the proper owner and beneficiary. Jackson National further breached the Policy by failing to provide the Arrington Family with an annual statement

which would have shown that the cash surrender value would not cover the next monthly deduction.

33. At all relevant times, Bill Arrington paid the premiums required under the Policy.

34. The Arrington Family never received notice of Jackson National's intent to terminate the Policy or of the 30 days grace period remainder.

35. If the Arrington Family had received notice of Jackson National's intent to terminate the Policy, they would have paid all outstanding premiums to keep the Policy in full force and effect.

36. Bill Arrington died on November 11, 2016. Jackson National denied Buck Arrington's claim on the Policy in January 2017. Buck Arrington thus sues Jackson National for breach of the insurance contract and all damages to which he is entitled.

### Request for Declaratory Judgment

37. Plaintiff incorporates the preceding factual allegations.

38. There is a real and substantial justiciable controversy between Buck Arrington and Jackson National that requires judicial declaration by this Court of the parties' rights and duties. Pursuant to Ch. 37.001 and 37.004 of the Texas Civil Practice and Remedies Code, Buck Arrington requests a judicial determination declaring that the Policy was wrongfully terminated and that Jackson National is obligated to reinstate the Policy and pay the full face value of the Policy.

### Negligence

39. As Bill Arrington and the Arrington Family's insurance agent, Burba owed them certain duties. Among these duties was the duty to ensure that they had the appropriate amount of insurance coverage, paid the appropriate premiums, and did not let their policies lapse due to nonpayment of premiums.

40. Because of the long term relationship and the high levels of trust between Burba and Bill Arrington, Burba owed Bill Arrington a duty to ensure that Bill Arrington received the appropriate amount of insurance coverage, paid the Policy premiums, received annual account statements, and knew if the Policy was close to lapsing

41. Burba breached his duty to the Bill Arrington and the Arrington Family through his negligence. Specifically, he failed to advise Bill Arrington or the Arrington Family that the monthly premium he advised, $1,100, would not be sufficient to prevent the Policy from lapsing over the life of the Policy. He did not forward the annual account statements. He never notified Bill Arrington or the Arrington Family that the Policy was in danger of lapsing. He never notified Bill Arrington or the Arrington Family that Jackson National had terminated the Policy in June 2015, nor did he advise Bill Arrington or the Arrington Family of their statutory right to seek reinstatement based upon mental incapacity.

42. As a result of Burba's negligence, Plaintiff was damaged by the termination of the Policy, for which he now sues.

**Breach of Fiduciary Duty**

43. Plaintiff incorporates the preceding factual allegations.

44. Bill Arrington's and Burba's longstanding relationship involved a high degree of trust and confidence, giving rise to an informal fiduciary duty between them.

45. This fiduciary duty required Burba to reasonably explain to Bill Arrington the material terms and conditions of the Policy, discuss the premium amounts, and ensure that Bill Arrington had adequate notice of any significant deadlines, grace periods, or coverage determinations regarding their insurance coverage. This is especially important when a customer

chooses a flexible premium adjustable life insurance policy, allowing the customer to adjust his premium month to month or year to year.

46. Burba breached his fiduciary duty to the Bill Arrington. Specifically, he failed to advise Bill Arrington that the monthly premium he advised, $1,100, would not be sufficient to prevent the Policy from lapsing over the life of the Policy. He did not forward the annual account statements. He never notified Bill Arrington that the Policy was in danger of lapsing. He never notified Bill Arrington that Jackson National had terminated the Policy in June 2015 or that the Arrington Family could seek reinstatement of the policy based upon mental incapacity.

47. As a result of Burba's breach of fiduciary duty, Plaintiff was damaged by the termination of the Policy, for which he now sues.

## Violations of the Texas Insurance Code

48. Plaintiff incorporates the preceding factual allegations.

49. The Texas Insurance Code regulates, among other things, certain activity by a life insurer following the unintentional default in the payment of insurance premiums caused by the mental incapacity of the insured. In its handling of this claim, Jackson National has engaged in misrepresentation of the Policy in violation of Chapter 541 of the Texas Insurance Code.

50. Tex. Ins. Code §1106.002 requires an insurer to reinstate an individual life insurance policy following the unintentional default in the payment of premiums if (1) the policy was in effect tenuously for at least 5 years before the lapse, and (2) there was not a default in the payment of premiums during that period.

51. In its handling of this claim, Jackson National never advised Bill Arrington or Arrington Family on its rights to reinstate the policy due to mental incapacity. When the Arrington Family learned of the Policy's termination and requested reinstatement, Jackson National never

provided notice of the mental incapacity exception for reinstatement of the Policy. Jackson National knew of Bill Arrington's mental incapacity because it spent months obtaining medical records from Mr. Arrington's health care providers. This failure to disclose a matter required by law was a violation of Tex. Ins. Code § 541.061(5).

52. The Arrington Family submitted a request for reinstatement of the Policy before the first anniversary of the date it lapsed. They were willing and able to pay any premiums owed from the date of the lapse to the date of reinstatement, plus interest of those premiums. However, Jackson National refused to reinstate the Policy.

**Damages**

53. The acts, omission, and practices of both Jackson National and Burba complained of in this action were the proximate cause of the damages sustained by Plaintiff. All of Jackson National and Burba's acts and practices were the producing cause of the actual damages suffered by Plaintiff. Those damages include, but are not limited to, actual damages and consequential damages suffered for breach of the insurance contract, negligence, breach of fiduciary duty, and violations of the Texas Insurance Code. They also include, but are not limited to, damages for mental anguish and emotional distress caused by Defendants' conduct. For all of these wrongful acts, omissions, and practices, Plaintiff is entitled to money damages as may be found by the jury and as permitted by statute.

54. The actions of Jackson National in handling this Policy and claim were done knowingly and intentionally or with a conscious or callous disregard for Plaintiff's rights, welfare, and wellbeing. As such, its actions reflected gross negligence and were so outrageous as to warrant the imposition of punitive or exemplary damages, for which Plaintiff further sues for recovery. Plaintiff seeks such punitive or exemplary damages as may be assessed by the jury in its discretion.

Any statutory or other defense asserted to such an award, and any limitation Defendants seek to impose on any such award, violates Article 1, Section 13 of the Bills of Rights of the Texas Constitution and is void. Any such limitation is also unconstitutional under the Due Process and Equal Protection Clauses of the United States Constitution.

### Attorneys' Fees

55. This suit was made necessary by the wrongful acts and practices of Defendants. Plaintiff has been forced to retain attorneys to prosecute his claims, for which he has agreed to pay a reasonable attorney's fee. In this regard, he is entitled to recover his reasonable attorneys' fees and expenses incurred and to be incurred in this action for the full prosecution of this claim through trial and appeal, if any, that are reasonable and necessary for Plaintiff to obtain the relief he seeks. Accordingly, Plaintiff further seeks recovery of his reasonable attorney's fees pursuant to Section 37.009 et. seq. of the Texas Civ. Prac. & Rem. Code, Section 38.001 et. seq. of the Texas Civ. Prac. & Rem. Code, or any of them.

### General Claims

56. All notices required to be given have been given, and all conditions precedent have been satisfied.

57. Plaintiff requests prejudgment interest at the maximum rate permitted by law, including that permitted pursuant to Tex. Ins. Code §542.060 and §1103.104, or the maximum rate permitted in equity.

58. Plaintiff demands a jury trial.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff William M. Arrington, as Representative of the Estate of William L. Arrington, prays that he have a full trial on the merits of his claim, that he have and recover his damages, together with any and all of his attorney's fees, costs, expenses, and interest to which he may be justly entitled, and for general relief to which he may be entitled at law or in equity.

Respectfully submitted,
**DEANS & LYONS, LLP**

 /s/ Michael P. Lyons
**Michael P. Lyons**, TSB #24013074
mlyons@deanslyons.com
**Whitney L. Warren** TSB #24084395
wwarren@deanslyons.com
325 N. Saint Paul St., Suite 1500
Dallas, Texas 75201-3891
Phone: (214) 965-8500
Fax: (214) 965-8505

By:   /s/ Amar Raval
James C. Plummer, TBA #16075700
jplummer@bergplummer.com
Amar Raval, TBA # 24046682
araval@bergplummer.com
**Berg Plummer Johnson & Raval**
4203 Montrose Boulevard, Suite 260
Houston, Texas 77006
Phone: (713) 526-0200
Fax: (832) 615-2665

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of the foregoing was served on all parties and/or counsel of record in accordance with Federal Rule of Civil Procedure 5 on May 9, 2017.

/s/ Michael P. Lyons
Michael P. Lyons
