IN THE UNITED STATES DISTRICRT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WILLIAM M. ARRINGTON, INDIVIDUALLY, AS BENEFICIARY, AND AS REPRESENTATIVE OF THE ESTATE OF WILLIAM L. ARRINGTON <br><br> v. <br><br> JACKSON NATIONAL LIFE INSURANCE COMPANY, DANNY C. BURBA, and GORDON B. RICHARDSON | Civil Action No. 3:17-cv-472 |

## SECOND AMENDED COMPLAINT

Plaintiff William M. Arrington, Individually, as beneficiary and as representative of the Estate of William L. Arrington, files this Second Amended Complaint complaining of Defendants Jackson National Life Insurance, Danny C. Burba, and Gordon B. Richardson and respectfully shows the Court as follows:

### Introduction

1. William L. Arrington paid Defendant Jackson National Life Insurance more than $200,000 in premiums to fund a life insurance policy. Neither Jackson National, nor the two agents on that policy, Defendants Danny Burba and Gordon Richardson—the active agent and agent of record, respectively—alerted Mr. Arrington of the potential for his life insurance policy to lapse due to a change in his variable premium. Consequently, Jackson National cancelled Mr. Arrington's policy for a $10,552.68 shortfall without giving proper notice under the terms of the life insurance policy. Jackson National then refused to resinstate Mr. Arrington's life insurance policy, and denied Plaintiff William M. Arrington's claim under the policy when his father died.

## Parties

2. Plaintiff William M. Arrington is an individual residing in Pampa, Texas. He appears in this action individually and as representative of the Estate of William L. Arrington.

3. Defendant Jackson National Life Insurance Company ("Jackson National") is a foreign company licensed to do business and doing business in the State of Texas. Jackson National has appeared and answered this suit.

4. Defendant Danny C. Burba ("Burba") is a resident of Amarillo, Texas. He can be served at 9 Monet Rue, Amarillo, Texas 79121 or wherever he may be found.

5. Defendant Gordon B. Richardson ("Richardson") is a resident of Caldwell, Texas. He can be served at 701 W. Fox Street, Caldwell, Texas 77836 or wherever he may be found.

## Jurisdiction and Venue

6. This Court has jurisdiction over Jackson National because it has purposefully availed itself of the privileges and benefits of conducting business in the State of Texas, and in doing so, Jackson National committed torts and other illegal acts that comprise the subject matter of this suit. Further Jackson National has answered and appeared in this case without challenging this Court's jurisdiction over it.

7. This Court has jurisdiction over Burba and Richardson because they are Texas residents.

8. Plaintiff contends that that this Court lacks jurisdiction over the subject matter of this case because there are no federal claims on the face of this well-pleaded complaint and there is not complete diversity of the parties. 28 U.S.C. §§ 1331-32.

9. Venue is proper in this Court and in this District because Burba is a resident of this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b)(1)-(2).

## Facts and Factual Background

10. Jackson National is in the insurance business and sells various forms of life insurance and annuities. The sale of these life insurance policies is promoted through captive sales agents and independent brokers and agents. The promise of life insurance is that upon the covered death of the insured, it will pay benefits to the policy beneficiary.

11. Implicit in the promise of the Jackson National policy is that it will timely, fairly, and objectively adjust and pay a covered claim. If in doubt about the cause or nature of the insured's death, Jackson National implicitly promises to fairly and objectively investigate the claim and promptly pay if the claim meets the policy requirements.

12. Insurance agents owe certain duties to their customers. If insurance agents have knowledge of their customers' needs and the potential lapse of a their customers' coverage, the agents have both a duty and obligation to ensure that their customers receive the appropriate amount of insurance coverage, pay the appropriate premiums, receive annual account statements, and remind them if their policies are close to lapsing. William L. Arrington ("Bill Arrington") sought out insurance brokers for these reasons and others.

13. On May 6, 1998, Bill Arrington applied for a life insurance policy with Southwestern Life Insurance Company ("Southwestern"). In his application, he confirmed that he, as the owner and proposed insured, would pay the premiums and all mail should be sent to him at his business address - William L. Arrington, Drawer 31, Pampa, Texas 79065. At the time of application, Margareta M. Arrington ("Mrs. Arrington") was named the primary beneficiary

and William M. Arrington ("Buck Arrington") was named as a beneficiary upon death of Mrs. Arrington. The application was signed by Bill Arrington and his agent, Burba, at Danny Burba Insurance Company.

14. Southwestern accepted Bill's application and issued him Policy No. 1000036324 (the "Policy") with a face value of $976,500. The Policy was a flexible premium adjustable life insurance policy, allowing the policyholder to adjust his premium month to month or year to year, among other benefits. Burba played an intricate part in helping Bill Arrington make this purchase and choose which type of life insurance policy would best suit his needs. Burba advised Bill Arrington about the annual premium amount he must pay to keep the Policy in effect. In doing so, Burba failed to properly explain at the outset the risk that Bill Arrington's planned monthly payments may not be enough to prevent the Policy from lapsing over the life of the Policy.

15. Upon receiving the Policy, Burba advised Bill Arrington to make a down payment and make a monthly payment of $1,100.00 per month for the life of the Policy. In total, from 1998 to 2015, Bill Arrington paid more than $200,000 towards the Policy. At no time did he intend for his premiums to be unpaid or the Policy to lapse for non-payment of premiums.

16. In February 2007, Bill Arrington received notice that Southwestern merged with Valley Forge Life Insurance Company ("Valley Forge"). In September 2007, he received another notice that Valley Forge changed its name to Reassure America Life Insurance Company ("Reassure"). Both Valley Forge and Reassure represented that the Policy would be serviced from its Coppell, Dallas County, Texas location.

17. On July 31, 2008, Mrs. Arrington wrote to Valley Forge and requested that Richardson replace Burba as the agent of record.

18. Notwithstanding Richardson becoming the agent of record, Burba was regularly copied on correspondence regarding the Policy by Southwestern, Valley Forge, Reassure, and (later) Jackson National. Indeed, Jackson National's internal records regarding the Policy refer to Burba as the active agent.

19. At all relevant times, Valley Forge, and later Reassure, sent correspondence and notices to Bill Arrington from its location in Coppell, Dallas County, Texas.

20. In 2009, Mrs. Arrington, the primary beneficiary of the Policy, passed away. Bill Arrington had already designated his son Buck Arrington as the contingent beneficiary in the original application for the Policy in 1998. In addition, he sent in a form, pursuant to the Policy's terms, to change the primary beneficiary to Buck Arrington. Nevertheless, Reassure, after receiving notice of Mrs. Arrington's death, continued to mail its subsequent correspondence to the "Estate of Margarita M. Arrington", rather than to Bill Arrington and the new beneficiaries.

21. The Policy required that notices regarding the Policy be mailed to Bill Arrington and the beneficiary of the Policy.

22. Jackson National's internal records show that Burba communicated back and forth with Reassure regarding the change of ownership forms after Mrs. Arrington's death. During this correspondence, Reassure referred to Burba as the active agent on the Policy.

23. Reassure also communicated with the agent of record, Richardson, during this time regarding the change of ownership and obtaining the necessary documents regarding Mrs. Arrington's passing.

24. On March 14, 2013, Bill Arrington received notice that Jackson National had acquired Reassure and Reassure had been merged with Jackson National as of December 31, 2012.

25. Bill Arrington and/or his representatives requested that for the purpose of communicating regarding the Policy, Jackson Nation update the Policy's mailing address to:

> William L. Arrington
> P.O. Box 31
> Pampa, TX 79066-0031

26. On November 25, 2013, Jackson National confirmed in writing that it had updated its records accordingly and that the Policy's mailing address was now:

> William L. Arrington
> P.O. Box 31
> Pampa, TX 79066-0031

27. Towards the end of 2015, Buck Arrington noticed that neither he nor Bill Arrington had been receiving statements regarding the Policy. Buck Arrington called Jackson National, only to learn that Jackson National had terminated the Policy on or about June 26, 2015 because a change in the variable premium had resulted in a $10,552.68 shortfall in premiums by Jackson National. Neither Bill nor Buck Arrington were aware of the Policy's termination before Buck Arrington called Jackson National. Neither had received notice of either the potential lapse or of the termination.

28. Pursuant the Policy's term, Bill and Buck Arrington immediately applied for reinstatement with the assistance of Burba. They provided Jackson National with Bill Arrington's medical history. However, Jackson National deemed him uninsurable and denied reinstatement on May 16, 2016. Unconscionably, Jackson National did so after collecting over $200,000 in premium payments.

29. Following Jackson National's denial, the Arrington Family sought to determine why the Policy was cancelled when Bill Arrington had consistently paid premiums—which Jacokson National consistently accepted—but had not received notices regarding the potential

lapse or termination of the Policy. After repeated requests, Jackson National eventually sent a letter to Buck with copies of letters it had supposedly sent to "The Estate of Margarita M. Arrington" to an old address—not to William L. Arrington at the address Jackson National confirmed in its November 25, 2013 letter. These letters alleged that the Policy lapsed when the cash surrender value was depleted and the premium payments were insufficient to bring the Policy out of the grace period.

30. Despite Jackson National's claims, neither Bill Arrington nor any member of the Arrington Family ever received any notice that the Policy was in danger of lapsing, nor any notice that the Policy would be terminated. Further, the 2014 account statement was not provided either to Bill Arrington or any member of the Arrington Family. Neither Bill Arrington nor any member of the Arrington Family received notice of the beginning of the Policy's grace period or any notice during the Policy's grace period that the Policy would lapse.

31. On information and belief, Burba and Richardson each received information sufficient to alert them that Bill Arrington's monthly payment of $1,100 was no longer sufficient, that the Policy was in danger of lapsing, and that the Policy had lapsed.

32. Burba and Richardson failed to advise either Bill Arrington or any member of the Arrington Family that the monthly premiums they advised, $1,100, were not sufficient to prevent the Policy from lapsing over the life of the Policy. Burba and Richardson never notified Bill Arrington or any member of the Arrington Family that the Policy was in danger of lapsing, or that Jackson National had terminated the Policy in June 2015.

33. Burba made several phone calls in November 2015 to Jackson National to find out about the status of the application for reinstatement of the Policy. Jackson National also sent Burba correspondence regarding the application for reinstatement.

34. The longstanding relationship between Bill Arrington and Burba was one of high levels of trust. Burba was Bill Arrington's agent for the majority of the 17 years that the Policy was in force. Burba assisted Bill Arrington in obtaining at least two other insurance policies. Burba and Bill Arrington regularly spoke on the phone with one another, and during those calls, Bill Arrington shared many confidences with Burba. As evidence of their relationship of trust, Burba would send Bible scriptures and other religious quotes to Bill Arrington that were responsive to the confidences Bill Arrington confided. In other words, Bill Arrington confided confidences to Burba and trusted Burba to provide beneficial advice. By not alerting Bill to the lapse of the Policy—even though Burba was aware of the lapse—Burba did not honor Bill's trust.

35. Bill Arrington died on November 11, 2016. Jackson National denied Buck Arrington's claim on the Policy in January 2017.

36. At all relevant times, Reassure and Jackson National maintained an office in Dallas County at P.O. Box 9584 Coppell, Texas 75019 where it purported to service Bill Arrington's policy.

37. At all relevant times, Burba continued to advise Bill Arrington on the Policy, as well as other related insurance products. Burba's actions in advising Bill Arrington are consistent with Jackson National's own internal records designating Burba the active agent on the policy, notwithstanding Richardson being listed as the agent of record. Burba received copies of the notices from Jackson National regarding the potential lapse of the Policy as the result of insufficient payment. But at no point did Burba alert or advise Bill Arrington, or any member of the Arrington Family—including Buck Arrington, that the Policy was in danger of lapsing due to insufficient payment.

38. Richardson was the agent of record from 2008 through 2015. Richardson continued to advise Bill Arrington on the Policy, as well as other related insurance products. At no point did Richardson alert or advise Bill Arrington that the Policy was in danger of lapsing due to insufficient payment.

39. Jackson National purportedly provided notices and correspondence regarding the Policy to Bill Arrington from its office in Dallas County.

40. At all relevant times, it was the habit and regular business practice of the Arrington Family to stamp each letter received regarding the Policy as "Received", along with the date received, and to save the documents for Bill Arrington's records. This systematic method of maintaining mail as it has been received was utilized for all correspondence and notices that were received concerning the Policy.

**Breach of the Insurance Contract**

41. Plaintiff incorporates the preceding factual allegations.

42. The Policy is a valid and enforceable agreement. According to the Policy, it terminates, among other reasons, if "the grace period ends without payment of any required premium" or "the total indebtedness equals or exceeds the Accumulation Value less the surrender charge." The Policy contains a 61-day grace period "to pay a premium that will cover the monthly deduction." Under the Policy, Jackson National was obligated to, at least 30 days before the end of the grace period, "send a written notice that the policy will lapse." The notice is to be sent to the owner at the last address shown in the insurer's records and to any assignee of record.

43. Jackson National breached the terms of the Policy by not providing proper notice to the last address shown in the insurer's records as required by the Policy. Jackson National

failed to address all notices to the proper owner at the last address on file. Jackson National further breached the Policy by not providing notice to Buck Arrington—the beneficiary of the Policy—as required by the Policy's terms. Jackson National further breached the Policy by failing to provide Bill Arrington with an annual statement that would have shown that the cash surrender value would not cover the next monthly deduction.

44. At all relevant times, Bill Arrington paid the premiums required under the Policy, and all relevant times, Jackson National accepted the premiums Bill Arrington paid.

45. Neither Bill Arrington, nor the Arrington Family, ever received notice of Jackson National's intent to terminate the Policy or of the 30 days grace period remainder.

46. If either Bill Arrington or the Arrington Family had received notice of Jackson National's intent to terminate the Policy, they would have paid all outstanding premiums to keep the Policy in full force and effect.

47. Bill Arrington died on November 11, 2016. Jackson National denied Buck Arrington's claim on the Policy in January 2017. Buck Arrington thus sues Jackson National for breach of the insurance contract and all damages to which he is entitled.

**Request for Declaratory Judgment**

48. Plaintiff incorporates the preceding factual allegations.

49. There is a real and substantial justiciable controversy between Buck Arrington and Jackson National that requires judicial declaration by this Court of the parties' rights and duties.

50. Pursuant to § 37.001 and § 37.004 of the Texas Civil Practice and Remedies Code, Buck Arrington requests a judicial determination declaring that the Policy was wrongfully

terminated and that Jackson National is obligated to reinstate the Policy and pay the full face value of the Policy.

### Negligence

51. As Bill Arrington's insurance agents on the Policy, Burba and Richardson owed Bill Arrington certain duties. Among these duties was the duty to ensure that Bill Arrington had the appropriate amount of insurance coverage, paid the appropriate premiums, and did not let his policy lapse due to nonpayment of premiums.

52. As the active agent of the Policy, and because of the long term relationship and the high levels of trust between Burba and Bill Arrington, Burba owed Bill Arrington a duty to ensure that Bill Arrington received the appropriate amount of insurance coverage, paid the Policy premiums, received annual account statements, and knew if the Policy was close to lapsing.

53. As the agent of record, Richardson owed Bill Arrington a duty to ensure that Bill Arrington received the appropriate amount of insurance coverage, paid the Policy premiums, received annual account statements, and knew if the Policy was close to lapsing.

54. Burba and Richardson breached their duty to Bill Arrington through their negligence. Specifically, Burba and Richardson each failed to advise Bill Arrington or the Arrington Family that the monthly premiums they originally advised, $1,100, would not be sufficient to prevent the Policy from lapsing. Neither Burba nor Richardson forwarded the annual account statements or any notices that Policy was going to lapse to Bill Arrington and the Arrington Family. Neither Burba nor Richardson notified Bill Arrington or the Arrington Family that the Policy was in danger of lapsing. Neither Burba nor Richardson notified Bill Arrington or the Arrington Family that Jackson National had terminated the Policy.

55. As a result of Burba and Richardson's negligence, Plaintiff was damaged.

### Breach of Fiduciary Duty

56. Plaintiff incorporates the preceding factual allegations.

57. Bill Arrington's and Burba's longstanding relationship involved a high degree of trust and confidence, giving rise to an informal fiduciary relationship between them.

58. By virtue of this fiduciary relationship, Burba should have reasonably explained to Bill Arrington the material terms and conditions of the Policy, discussed the premium amounts, and ensured that Bill Arrington had adequate notice of any significant deadlines, grace periods, or coverage determinations regarding their insurance coverage. Fulfilling this duty is especially critical in this case, because Bill Arrington—acting on Burba's advice—selected a flexible premium adjustable life insurance policy.

59. Burba breached his fiduciary duty to Bill Arrington. Specifically, he failed to advise Bill Arrington that the monthly premiums he advised, $1,100, would not be sufficient to prevent the Policy from lapsing over the life of the Policy. He did not forward the annual account statements. By virtue of his informal fiduciary relationship with Bill Arrington, Burba should have done so. Burba never notified Bill Arrington that the Policy was in danger of lapsing. By virtue of his informal fiduciary relationship with Bill Arrington, Burba should have done so. Burba never notified Bill Arrington that Jackson National had terminated the Policy. By virtue of his informal fiduciary relationship with Bill Arrington, Burba should have done so.

60. As a result of Burba's breach of fiduciary duty, Plaintiff was damaged.

### Damages

61. The acts, omission, and practices of Jackson National, Burba, and Richardson complained of in this action were the proximate cause of the damages sustained by Plaintiff. All of Jackson National, Burba, and Richardson's acts and practices were the producing cause of the

actual damages suffered by Plaintiff. Those damages include, but are not limited to, actual damages and consequential damages suffered for breach of the insurance contract, negligence, and breach of fiduciary duty. They also include, but are not limited to, damages for mental anguish and emotional distress caused by Defendants' conduct. For all of these wrongful acts, omissions, and practices, Plaintiff is entitled to money damages as may be found by the jury and as permitted by statute.

62. Any statutory or other defense asserted to such an award, and any limitation Defendants seek to impose on any such award, violates Article 1, Section 13 of Bills of Rights of the Texas Constitution and is void. Any such limitation is also unconstitutional under the Due Process and Equal Protection Clauses of the United States Constitution.

63. Plaintiff seeks equitable remedies, including, but not limited to, equitable forfeiture, disgorgement, and the imposition of a construction trust.

## Attorneys' Fees

64. This suit was made necessary by the wrongful acts and practices of Defendants. Plaintiff has been forced to retain attorneys to prosecute his claims, for which he has agreed to pay a reasonable attorneys' fee. In this regard, he is entitled to recover his reasonable attorneys' fees and expenses incurred and to be incurred in this action for the full prosecution of this claim through trial and appeal, if any, that are reasonable and necessary for Plaintiff to obtain the relief he seeks. Accordingly, Plaintiff further seeks recovery of his reasonable attorneys' fees pursuant to Section 37.009 et. seq. of the Texas Civil Practice & Remedies Code, Section 38.001 et. seq. of the Texas Civil Practice & Remedies Code, or any of them.

**General Claims**

65. All notices required to be given have been given, and all conditions precedent have been satisfied.

66. Plaintiff requests prejudgment interest at the maximum rate permitted by law or the maximum rate permitted in equity.

67. Plaintiff demands a jury trial on all issues that are triable to a jury.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, Plaintiff William M. Arrington, as Representative of the Estate of William L. Arrington, prays that he have a full trial on the merits of his claim, that he have and recover his damages, together with any and all of his attorneys' fees, costs, expenses, and interest to which he may be justly entitled, and for general relief to which he may be entitled at law or in equity.

Respectfully submitted,

**DEANS & LYONS, LLP**

_____

**Michael P. Lyons**, TSB #24013074
mlyons@deanslyons.com
**Christopher J. Simmons,** TSB #24058796
csimmons@deanslyons.com
**Stephen Higdon,** TSB #24087719
shigdon@deanslyons.com
325 N. Saint Paul St., Suite 1500
Dallas, Texas 75201
Phone: (214) 965-8500
Fax: (214) 965-8505

**James C. Plummer**, TSB #16075700
jplummer@bergplummer.com
**Amar Raval**, TSB # 24046682
araval@bergplummer.com
**Berg Plummer Johnson & Raval, LLP**
4203 Montrose Boulevard, Suite 260
Houston, Texas 77006
Phone: (713) 526-0200
Fax: (832) 615-2665

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on all parties and/or counsel of record in accordance with Federal Rule of Civil Procedure 5 on February 27, 2018.

_____

Christopher J. Simmons