# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM M. ARRINGTON, Individually, as Beneficiary, and as Representative of the Estate of William L. Arrington | § § § § § § | |
| v. | § § § | CASE NO. 3:17-CV-0472-S |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, DANNY C. BURBA, and GORDON B. RICHARDSON | § § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff William M. Arrington's ("Buck") Motion for Leave to Amend and to Remand [ECF No. 53]. For the following reasons, the Court grants the Motion.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Chief Judge Barbara M.G. Lynn to the docket of this Court on March 8, 2018.

This lawsuit arises out of the lapse of a life insurance policy that William L. Arrington ("Bill") paid Jackson National Life Insurance Company ("Jackson National") to fund. Second Am. Compl. ("Compl.") ¶ 1. Jackson National sells various forms of life insurance and annuities. *Id.* ¶ 10. On May 6, 1998, Bill applied for a life insurance policy with Southwestern Life Insurance Company ("Southwestern"). *Id.* ¶ 13. He named Margareta M. Arrington ("Margareta") as the primary beneficiary. *Id.* Buck was named contingent beneficiary. *Id.* Bill and his agent, Danny Burba ("Burba"), signed the application. *Id.*

Southwestern accepted the application and issued Bill a life insurance policy with a face value of $976,500. *Id.* ¶ 14. The policy was a flexible premium adjustable life insurance policy. *Id.* Burba advised Bill as to the annual premium amount he had to pay to keep the policy in effect. *Id.* Burba allegedly told Bill to make a down payment and then to make a monthly payment of $1,100 per month for the life of the policy. *Id.* ¶ 15. From 1998 to 2015, Bill paid more than $200,000 toward the policy. *Id.*

In February 2007, Bill received notice that Southwestern merged with Valley Forge Life Insurance Company. *Id.* ¶ 16. In September 2007, Bill received notice that Valley Forge Life Insurance Company changed its name to Reassure America Life Insurance Company ("Reassure"). *Id.* On July 31, 2008, Margareta requested that Gordon Richardson ("Richardson") replace Burba as the agent of record. *Id.* ¶ 17. However, Burba continued to be copied on correspondence regarding the policy, and internal records referred to Burba as the "active agent." *Id.* ¶ 18.

In 2009, Margareta died. *Id.* ¶ 20. Bill sent a form to Reassure to designate Buck as the primary beneficiary of the policy, but Reassure continued to mail subsequent correspondence to "The Estate of Margarita [sic] M. Arrington." *Id.* Burba and Richardson both communicated with Reassure regarding the change of ownership. *Id.* ¶¶ 22-23.

On March 14, 2013, Bill received notice that Jackson National had acquired Reassure. *Id.* ¶ 24. Bill requested that Jackson National update the policy's mailing address. *Id.* ¶ 25. On November 25, 2013, Jackson National confirmed that it had updated its records accordingly. *Id.* ¶ 26. Toward the end of 2015, Buck and Bill stopped receiving statements regarding the policy. *Id.* ¶ 27. Upon calling Jackson National, they learned Jackson National had terminated the policy on or about June 26, 2015. *Id.* A change in the variable premium had resulted in a shortfall in

premiums. *Id.* Bill and Buck were unaware of the termination prior to the phone call, and they did not receive notice of the potential lapse. *Id.*

Bill and Buck, with Burba's assistance, applied for reinstatement, but Jackson National deemed Bill uninsurable and denied reinstatement. *Id.* ¶ 28. Bill and Buck requested information related to the termination, and Jackson National sent them copies of letters addressed to "The Estate of Margarita [sic] M. Arrington" at an old address. *Id.* ¶ 29. Burba and Richardson allegedly received information sufficient to alert them that Bill's monthly payment was no longer adequate and that the policy was in danger of lapsing, but neither agent advised any member of the Arrington family of these issues. *Id.* ¶¶ 31-32.

Burba was Bill's insurance agent for many years and assisted Bill in obtaining other insurance policies. *Id.* ¶ 34. The two men spoke frequently about matters both related and unrelated to insurance. *Id.* Burba allegedly continued to advise Bill on the policy and other insurance products at all relevant times. *Id.* ¶ 37. Richardson was the agent of record from 2008 through 2015. *Id.* ¶ 38. Richardson also advised Bill on the policy and other insurance products. *Id.* Bill died on November 11, 2016, and Jackson National denied Buck's claim on the policy approximately two months later. *Id.* ¶ 35.

Buck filed suit in the 298th District Court, Dallas County, on January 4, 2017. Jackson National removed the case to this Court on February 20, 2017. Buck moved to remand the case to state court. The Court heard oral argument on Buck's motion on August 3, 2017 (the "Lynn Hearing"). After hearing the parties' arguments, the Court denied the Motion to Remand and granted Buck's Amended Motion for Leave to File Amended Complaint. Order 1 [ECF No. 27]. The Court also dismissed Buck's claims against Burba without prejudice. *Id.* The Court found that "it is an undisputed fact that [Burba] was removed by the Arrington family in 2009." Hr'g Tr.

3

32:14-15. The Court further noted that Burba's "assistance with getting a change form" and assistance with applying for reinstatement did not establish that Burba had any duty, so there was no "legal basis on which the plaintiffs could potentially recover from [Burba]." *Id.* at 32:16-23. However, the Court dismissed the claim without prejudice, noting that Buck may be able to state a claim upon conducting further discovery, locating Burba, and amending the Complaint. *Id.* at 32:24-33:4.

Buck filed his Second Amended Complaint on February 27, 2018. In the Second Amended Complaint, Buck alleges causes of action for breach of the insurance contract, negligence, and breach of fiduciary duty. He seeks a declaratory judgment that the policy was wrongfully terminated and that Jackson National is obligated to reinstate the policy and pay the policy's full face value. In the Second Amended Complaint, Buck seeks to join Burba and Richardson, both of whom are non-diverse parties, as defendants.

## II. LEGAL STANDARD

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In determining whether to deny or permit joinder, courts in the Fifth Circuit balance four non-exclusive factors. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). The four factors are "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* If the court, upon balancing the equities, permits joinder of a non-diverse defendant, it must remand to state court. *Id.* If it does not permit joinder, the federal court retains jurisdiction. *Id.*

4

Courts strictly construe the removal statutes in favor of remand. *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002).

### III. ANALYSIS

#### A. *Whether Parties Were Joined to Defeat Jurisdiction*

As to the first *Hensgens* factor, the Court finds that the insurance agents were not joined for the purpose of defeating federal jurisdiction for two reasons. First, Buck included Burba as a defendant in his state court petition. This fact weighs in favor of joinder. *See Watson v. Law Enf't All. of Am., Inc.*, 451 F. Supp. 2d 870, 873 (W.D. Tex. 2006) (finding first factor weighed in favor of joinder where "Plaintiffs sought to include [non-diverse defendant] in this litigation from the beginning."). As to Richardson, Buck argues that he did not realize he could allege claims against him until he had the benefit of discovery and the Court's comments at the Lynn Hearing.

Second, the Court finds that Buck may have a valid cause of action against Burba and/or Richardson. Where the plaintiff has a valid cause of action against the non-diverse defendant, courts have found that "the principal purpose of the amendment was not to defeat federal jurisdiction." *See Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991). Buck alleges two causes of action against Burba: negligence and breach of fiduciary duty. Buck also alleges that Richardson was negligent. "Whether a duty exists is a threshold inquiry . . . liability cannot be imposed if no duty exists." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

Buck contends that he has a valid negligence claim against Burba and Richardson because, under Texas law, an insurance agent has a duty to help his client avoid losing coverage if he is aware that the client is about to lose coverage. *See, e.g., Trinity Universal Ins. Co. v. Burnette*, 560 S.W.2d 440, 443 (Tex. App.—Beaumont 1977, no writ) ("Although there was no statutory or contractual duty impressed upon Davis to notify its policyholders of nonrenewal, we hold that

5

Davis was under a duty, as plaintiffs' insurance agent, to either renew their policy . . ., replace the policy . . ., or notify them of its nonrenewal . . . ."). According to Buck, both Burba and Richardson were aware of the potential lapse in coverage but failed to alert Bill.

In Texas, insurance agents owe their clients limited duties. *See May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992) ("It is established in Texas that an insurance agent . . . owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so."); *Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*, 514 F. Supp. 2d 972, 982 (S.D. Tex. 2007) ("An insurance agent may not misrepresent an insurance policy's terms. Also, if an agent is acting on behalf of the insured, he is under a duty to explain the application for insurance and the terms of the coverage being applied for." (citations omitted)). Whether any other duties exist "most likely depend[s] on the course of dealings between agent and insured." *Aspen Specialty Ins. Co.*, 514 F. Supp. 2d at 983 (citing *McCall v. Marshall*, 398 S.W.2d 106, 109 (Tex. 1965)).

Courts applying Texas law have imposed additional duties on insurance agents in certain circumstances. *See, e.g., Kitching v. Zamora*, 695 S.W.2d 553, 554 (Tex. 1985) (imposing duty to keep customer informed about insurance policy expiration date where agent received information intended for customer). While the Court is skeptical that the circumstances alleged by Buck would give rise to a duty to notify Bill of the potential lapse in insurance coverage, the Court finds that the issue is most properly determined by the state court. *See Holcomb v. Brience, Inc.*, No. 3:01-CV-1715-M, 2001 WL 1480756, at *3 (N.D. Tex. Nov. 20, 2001).

Buck also argues that Burba owed a heightened duty to Bill because the two had a special relationship.[1] Buck argues that he has alleged a special relationship between Bill and Burba because the two had a relationship spanning more than ten years. *See, e.g., Webb v. UnumProvident Corp.*, 507 F. Supp. 2d 668, 684-85 (W.D. Tex. 2005) (imposing heightened duties on insurance agent due to "extraordinary relationship" with insured that included "longstanding agent to insured relationship" and agent's "intimate involvement with [insured's] unique disability insurance needs"). Further, Buck alleges that the relationship involved "high levels of trust" and that Burba assisted Bill in obtaining multiple insurance polices. Compl. ¶ 34. It is unclear whether the facts alleged are sufficient to give rise to a special relationship and impose heightened duties. However, "[t]he Court must resolve all ambiguities in state law in favor of remand." *Webb*, 507 F. Supp. 2d at 685.

For these reasons, the Court finds that "it is, at the very least, ambiguous whether Texas law would impose a duty on" Burba and Richardson. *Id.* If a duty was imposed, the Court finds that Buck has alleged sufficient facts to support a finding that the agents breached their duties and that such breach proximately caused Buck's damages. Therefore, evaluating the factual allegations in the light most favorable to Buck, as it must do,[2] the Court finds that the first *Hensgens* factor weighs in favor of permitting joinder.

### B. *Whether Plaintiff Was Dilatory*

It took Buck more than one year and two amendments to assert the current version of his claim against Burba and to add his claim against Richardson. However, Buck has attempted to

---

[1] Buck also alleges that this special relationship gave rise to an "informal fiduciary relationship between" Bill and Burba. Compl. ¶ 57.
[2] *See McNeel v. Kemper Cas. Ins. Co.*, No. Civ. A. 3:04-CV-0734-, 2004 WL 1635757, at *4 (N.D. Tex. July 21, 2004).

7

assert claims against Burba since filing his original petition in state court. The Court finds that Buck has not been dilatory in joining Burba. Buck contends that he did not know he had a cause of action against Richardson until the Lynn Hearing. *See* Pl.'s Br. 8 ("Plaintiff amended his complaint and in the process added Richardson based on the arguments of Jackson National's counsel at the remand hearing."). This does not explain Buck's failure to join Richardson until February 27, 2018—approximately six months after the Lynn Hearing took place.

For the foregoing reasons, the Court finds that the second *Hensgens* factor weighs in favor of permitting joinder of Burba but not of Richardson.

### C. *Whether Plaintiff Will Be Prejudiced*

The main concern in *Hensgens* was the possibility of parallel federal and state proceedings, which is a factor in the instant case. *See Holcomb*, 2001 WL 1480756, at *3; *see also AMX Envtl. Evolution, Ltd. v. Carroll Fulmer Logistics Corp.*, Civ. A. No. 3:08-CV-0908-G, 2009 WL 972994, at *4 (N.D. Tex. Apr. 9, 2009) ("Requiring a plaintiff to pursue parallel federal and state court actions . . . create[s] judicial inefficiency and increase[s] the possibility of conflicting outcomes."). Buck contends that he intends to pursue recovery not only from Jackson National but also from Burba and Richardson. This Court will not deny him the opportunity to bring all of his related claims in one suit.

For this reason, the Court finds that the third factor weighs in favor of permitting joinder.

### D. *Whether Other Factors Bear on the Equities*

Although consideration of other equitable factors includes whether granting leave would deprive a defendant of a properly invoked federal forum, that fact is likely to be present in every case in which the plaintiff seeks to add a non-diverse defendant. *City of Kerrville, Tex. v. C&C*

*Groundwater Serv. LLC*, Case No. 5:12-CV-365-XR, 2012 WL 12864944, at *3 (W.D. Tex. July 20, 2012).

The Court finds that the fourth factor is neutral.

## IV. CONCLUSION

The Court concludes that application of the *Hensgens* factors counsels in favor of permitting joinder. Buck's Motion for Leave to Amend is therefore granted. Because amendment destroys complete diversity, Buck's Motion to Remand is also granted, and the case is remanded to the 298th District Court, Dallas County, for further proceedings.

**SO ORDERED.**
SIGNED *October 25, 2018*

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE